**HUYNH THI ANH et al., Plaintiffs,**

v.

**Edward LEVI, Individually and as Attorney General of the United States, et al., Defendants.**

**Civ. No. 76–71086.**

United States District Court,
E. D. Michigan, S. D.

Feb. 15, 1977.

Martin Guggenheim, Melvin L. Wulf, Juvenile Rights Project, ACLU Foundation, Burt Neuborne, New York University School of Law, New York City, Henry Baskin, Michigan Civil Liberties Union, Southfield, Mich., Harold Koenigsberg, Michigan Civil Liberties Union, Birmingham, Mich., for Huynh Thi Anh, Dao Thanh Linh, Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc.

Lawrence W. Chamblee, Dept. of Justice, Government Regulations and Labor Section, Crim. Div., Washington, D. C., United States Atty's Office, Civ. Div., Detroit, Mich., for Edward Levi, Atty. Gen. of United States, Leonard Chapman, Commissioner, Immigration & Naturalization, A. J. Salturelli, Dist. Dir. Immigration & Naturalization.

Robert N. Rosenberg, Asst. Atty. Gen., Lansing, Mich., for Michigan Dept. of Social Services, John T. Dempsey, Director, Mich. Dept. of Social Services, David L. Froh, Executive Director, Mich. Dept. of Social Services, Michael J. Hall, employee, Michigan Dept. of Social Services.

Donald. E. Shelton, Forsythe, Campbell, Vandenberg, Clevenger & Bishop, P. C., Ann Arbor, Mich., for Dennis and Margaret Arvidson and Jay and Beth Donaldson.

William G. Paulus, Salem, Or., for Sister Adele Mansfield.

Eliot G. Striar, Asst. Corp. Counsel for Washtenaw County, Ann Arbor, Mich., for Washtenaw County Probate Court, Francis L. O'Brien and Rodney E. Hutchinson, Judges of Probate.

Jack C. Hays, Asst. Civ. Counsel, Pontiac, Mich., for Oakland County Probate Court, Donald E. Adams, Norman R. Barnard, Eugene Arthur Moore, John J. O'Brien, Judges of Probate.

Dorothy L. Cottrell, Director, Oakland County Legal Aid Society, Pontiac, Mich., for guardian ad litem.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The several defendants have moved to dismiss the plaintiffs' complaint. This opinion deals only with the Court's jurisdiction with respect to custodial issues. Counsel will be given the opportunity to make additional arguments with respect to the Court's jurisdiction to entertain actions for damages.

For the purposes of the motions under consideration, the well-pleaded facts of the complaint are deemed to be true.

### The Parties

The parties in this lawsuit may be conveniently grouped as follows.

### The Children

Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam, and Dao Thanh Duc are Vietnamese citizens born in South Vietnam between 1963 and 1966. They are the children of Vietnamese citizens who are not parties to this lawsuit and about which very little has been alleged.

The caption on the complaint contains the false premise that they are represented by their grandmother as next friend. Subsequent to the commencement of the lawsuit, the Court appointed Dorothy Cottrell as guardian ad litem of the children. The guardian ad litem has filed no pleading seeking relief on their behalf.

The children are presently in the United States through the exercise of the parole power by the Federal defendants. 8 U.S.C. § 1182(d)(5).

### The Plaintiffs

The real plaintiffs are Huynh Thi Anh and Dao Thanh Linh, Vietnamese citizens. The plaintiffs refer to themselves as Mrs. Anh and Mr. Linh. Mrs. Anh is the paternal grandmother of the children. Mr. Linh is her son, the brother of the children's father, i. e., their uncle. The allegation that Mrs. Anh is the legal guardian of the children is considered to be a legal conclusion, but the plaintiffs have alleged facts which suggest that her relationship to the children in Vietnam would, in this country, be defined as "in loco parentis".

### The Federal Defendants

The federal defendants are Edward Levi, the former Attorney General of the United States; Leonard Chapman, Commissioner of Immigration and Naturalization Service of the United States (referred to as INS); and A. J. Salturelli, the Michigan District Director of INS. These defendants are sued individually and in their respective official capacities.

### The State Defendants

The state defendants are the Michigan Department of Social Services; John T. Dempsey, the Director of Michigan's Department of Social Services; David L. Froh, the Executive Director of Michigan's Department of Social Services; and Michael J. Hall, a consultant for the Office of Children and Youth of Michigan's Department of Social Services. The named individuals are sued individually and in their respective official capacities.

### The Probate Court Defendants

The probate court defendants are the Probate Courts of Oakland County, Michigan, and Washtenaw County, Michigan, and the Probate Judges thereof in their official capacities only.

### The Foster Parent Defendants

The foster parent defendants, Dennis and Margaret Arvidson and Jay and Beth Donaldson, are two married couples with whom the children have been placed for possible adoption. The Arvidsons have petitioned the Oakland County Probate Court for adoption of three (3) of the children. The Donaldsons have petitioned the Washtenaw County Probate Court for adoption of one (1) of the children.

*Other Defendants*

Other defendants include Sister Adele Mansfield, the director of a convent in Oregon, and Jodie R. Darragh, a resident of Georgia who at one time held herself to be an agent for the International Adoption Agency.

*The Complaint*

With some editing by the Court with respect to pleaded legal conclusions, the plaintiffs make the following factual allegations:

"25. In April 1975 in the waning days of the war in Vietnam the United States government and particularly the Department of Justice and the Immigration and Naturalization Service entered into a series of agreements with a number of private and public child-care agencies for the purpose of evacuating and bringing to this country Vietnamese children who were then residing in or around Saigon. Over 2,000 such children were brought into the United States pursuant to these agreements in what has become known as 'Operation Babylift.' Without the intervention of the Department of Justice and the Immigration and Naturalization Service, these children could not have entered the United States. Among the children who were brought into the country were the four minor plaintiffs in this case.

"26. * * * Since their infancy and until on or about April 15, 1975, she [plaintiff Huynh Thi Anh] had custody and control of these four children and raised them in her home in Saigon, South Vietnam.

"27. Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc are the eldest sons of Dao Van Hung, their father, and Du Thi Bach Mai, their mother. Mr. Hung is the first born son of Mrs. Anh and these four boys therefore have a special importance according to Vietnamese tradition.

[The Court recognizes that some defendants may take the position that this latter allegation is more argumentative than factual.]

"28. Early in April 1975, Mrs. Anh, aware of the nearing of the war's end, feared for the lives of her grandsons in Saigon. Accordingly, on or about April 15, 1975, Mrs. Anh brought her four grandsons for safekeeping to Mrs. Tran Thi Khiem, who, in April 1975, worked at the Hoa Binh Orphanage in Xom Moi, Vietnam and in the hope that Mrs. Khiem could effectuate the children's safe removal from Vietnam to the United States.

"29. At no time did Mrs. Anh, or any other relative of Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc, sign a release for adoption of the children.

"30. At no time did Mrs. Anh, or any other relative of Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc, intend to relinquish any legal rights to custody of the children. In fact, Mrs. Anh at all times intended to make every effort to follow her grandsons to the United States and rejoin them here.

"31. After the children had come to reside at the Hoa Binh Orphanage, Jodie R. Darragh, who claimed to be a representative for the Agency for International Adoption, advised Mrs. Khiem and the director of the 'orphanage,' Chu Van Tang, that she, Mrs. Darragh, could arrange to bring 40 of the children in the orphanage to the United States. To this end she stated that she would need 'releases' for 40 children and she asked that the 'releases' be made out to the defendant Michigan Department of Social Services. For this purpose, Mr. Tang signed 'releases' for 40 children, including, upon information and belief, three of Mrs. Anh's four grandsons, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc and Mrs. Khiem's own six children to Michigan's Department of Social Services. These 'releases' were not notarized. Upon information and belief, no 'release' was ever signed for Dao Thanh Dong.

"32. After receiving these 'releases,' Mrs. Darragh left the Orphanage and

was never seen again by Mrs. Khiem. On April 17, 1975, Mrs. Darragh telephoned Mrs. Khiem and told her she was unable to get the necessary papers to take the children out of Vietnam. In fact Mrs. Darragh never assisted in the evacuation of any of the 40 children and left Vietnam without returning any of the 'releases.'

"33. On or about April 21, 1975 and wholly without the services or assistance of Mrs. Darragh or any other representative of the Michigan Department of Social Services, Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc along with several other children from the orphanage including Mrs. Khiem's own six children and two nephews were evacuated to the United States. This evacuation was effectuated through the services of Father Crawford, a Catholic priest in Saigon. upon their arrival in the United States, the children were placed in a Catholic convent in Mount Angel, Oregon run by the Benedictine Sisters.

\*       \*       \*       \*       \*       \*

"36. On or about April 29, 1975, Mrs. Anh and her son Mr. Linh left Saigon and were brought to Guam where they were forced to stay for several weeks. In the middle of June 1975 they arrived in the United States as refugees and, upon arrival, were confined to Camp Pendleton, California.

"37. Sometime in June 1975 Mrs. Khiem learned that Mrs. Anh had arrived in the United States as a refugee and was confined to Camp Pendleton. Accordingly, when in mid-June, 1975, representatives of the Michigan Department of Social Services came to the Benedictine Sisters Convent at Mount Angel seeking custody of Mrs. Anh's four grandsons as well as Mrs. Khiem's own six children, Mrs. Khiem advised the representative that the releases were not valid and that Mrs. Anh was in the United States. The representatives left Mount Angel without taking any of the children.

"38. On or about July 14, 1975, the representatives from the Michigan Department of Social Services returned to Mount Angel and took Mrs. Anh's four grandsons against their wishes and over the protests of Mrs. Khiem.

"39. Sister Adele Mansfield, the Director of the Benedictine Sisters Convent at Mount Angel, was specifically told of Mrs. Anh's presence in the United States, of her wish to have her grandchildren returned to her and of the fact that no relinquishment of her rights to her grandchildren was ever made. Notwithstanding this, Sister Adele allowed the children to be removed from her custody and brought to foster homes in Michigan.

"40. Mrs. Anh and Mr. Linh remained confined at Camp Pendleton until on or about July 24, 1975 when they went directly to Mount Angel in Oregon. However, by this time Mrs. Anh's grandsons had already been removed to the state of Michigan."

Adoption proceedings for the children are now pending, in different stages in the two defendant Probate Courts, but no final order pending adoption has been entered; and this Court, on July 7, 1976, enjoined the Probate Court defendants from issuing final orders of adoption or further orders terminating parental rights with respect to said adoption proceedings. Said order did not restrict the Probate Court defendants from supervision of the custody of the children or from investigation and other normal preliminary adoption proceedings.

The plaintiffs made several other allegations concerning the bad faith of several defendants in the manner in which they have proceeded, but these allegations are not relevant to the issue of the Court's present jurisdiction with respect to custody of the children.

The plaintiffs' jurisdictional averments are as follows:

"2. This action arises under §§ 1981, 1983, 1985, and 1986 of Title 42 of the United States Code, §§ 1101, et seq. of Title 8 of the United States Code, the Constitution of the United States and

particularly the First, Fourth, Fifth, Ninth and Fourteenth Amendments thereto, the treaties of the United States and particularly the Geneva Convention, the Universal Declaration of Human Rights, and the Paris Peace Agreement of 1973, and the law of nations, particularly the adoption laws of the government of South Vietnam. Jurisdiction is conferred on this Court by §§ 1331, 1343(3) and (4), 1350, 1360 and 2241, et seq. of Title 28 of the United States Code, common law habeas corpus pursuant to Article I, Section 6 of the United States Constitution, and the issuance of declaratory relief is authorized by Title 28 U.S.C. § 2201.

"3. The Amount in controversy, exclusive of costs and interest, exceeds $10,-000."

The plaintiffs seek the following relief:

"1. That this Court enter a declaratory judgment that Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc are ineligible for adoption.

"2. That this Court order the defendant Edward Levi and the defendant employees of the Immigration and Naturalization Service to withdraw the current grant of parole for Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc for the purposes of adoption and immediately reparole them to the custody of the adult plaintiffs.

"3. That this Court order the defendant Michigan Department of Social Services as well as all of its defendant employees or agents, including Mr. and Mrs. Arvidson and Mr. and Mrs. Donaldson to relinquish custody of Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc and return them to the custody of the adult plaintiffs.

"4. That the Court order the payment of damages by the defendants to the plaintiffs in the amount of $500,000 for compensatory damages and $500,000 punitive damages.

"5. That this Court order that the defendant Washtenaw County Probate and its Judges of Probate and Oakland County Probate and its Judges of Probate be enjoined from proceeding further with any adoption proceedings concerning Dao Thanh Dong, Dao Thanh Hein, Dao Thanh Tam and Dao Thanh Duc until final judgment and that those proceedings be stayed *pendente lite.*

"6. That this Court order the defendants to pay the plaintiffs attorneys' fees, costs and disbursements.

"7. That this Court order such further relief as to it may seem just and proper."

### Conclusions of Law

■ If the Court has jurisdiction to order any party or combination of parties to surrender or deliver custody of the children to the plaintiffs, it must be pursuant to 28 U.S.C. § 2241. Federal courts do not have jurisdiction to make a custody determination every time it is asserted that a person's custody is wrongful. Title 28, U.S.C. § 2241(c) contains the following language of limitation:

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under or by color of the authority of the United States . . .; or

\*    \*    \*    \*    \*    \*

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or . . ."

Different considerations control the Court's authority to make an effective custodial order against (I) the Federal defendants, (II) the State, Probate Court, and Foster Parent defendants, and (III) the Other defendants.

### I.

Without doubt the Federal defendants have the authority and perhaps the responsibility to make a determination whether the children satisfy the criteria for admission into the United States under the definition of an orphan "child", 8 U.S.C. § 1101(b)(1)(F), classifiable as an "immediate relative" under 8 U.S.C. § 1151(b). This determination, when made, may have a sub-

stantial impact upon state adoption proceedings.

The Children are in the actual custody of the State, Probate Court, and Foster Parent defendants. The plaintiffs, in their complaint, make all manner of assertions about the authority of the Federal defendants to place the children in the custody of the plaintiffs, but as a matter of law the Court determines that the Federal defendants do not have the authority to do so.

■ It is provided in 8 U.S.C. § 1182(d)(6) that the Attorney General shall prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of excludable aliens applying for temporary admission under subsection (d). The Federal defendants correctly argue that the statutory grant of authority to the Attorney General is to insure that the alien does not put himself beyond the reach of immigration authorities. It is not a grant of authority to adjudicate or enforce custodial or constitutional rights and claims.

In *Nguyen Da Yen v. Kissinger,* 528 F.2d 1194 (CA 9 1975), the plaintiffs were babylifted children with living natural parents in Vietnam. They were allegedly detained in the United States in violation of their fundamental and constitutional rights. They were in this country with parole status granted by the government. It was their continued custody within the United States that was under attack. The court noted that the exercise of discretion to continue their parole status, as a practical matter, absent court intervention, precluded their return to Vietnam. Clearly, there was no other available state or federal judicial remedy. Under these circumstances, the court concluded, the exercise by the United States District Court of Section 2241 habeas corpus jurisdiction was appropriate.

Although the court in *Nguyen Da Yen,* at 1202, said that the Federal habeas statute predicates the exercises of Federal habeas jurisdiction not on the character of the custodian, but on that of the custody in viola-

tion of the Constitution or laws of the United States, it is clear from footnote 16 at 1203 that the children were considered to be in federal custody within the meaning of 2241(c)(1).

■ The situation here is in many respects different. The children, like the children in *Nguyen Da Yen,*[1] have parole status from the Federal defendants. So, too, do the plaintiffs. The ultimate custody battle here is between the plaintiffs on one hand and the Foster Parent defendants on the other. No matter which side is eventually successful, the children will remain in the United States. The plaintiffs here do not claim the custody of the children on behalf of the children's parents, but rather for themselves. There is no allegation or pretense that the plaintiffs are attempting to obtain custody to return the children to Vietnam.

The children are in the custody of the United States in one sense, but such custody is not challenged. Under these circumstances, it is my opinion that the Court has no power to make an effective custodial order against the Federal defendants.

## II.

If the Court has authority to exercise habeas jurisdiction against the State, Probate Court, and Foster Parent defendants, it is pursuant to Section 2241(c)(3).

There is overwhelming authority that state prisoners must exhaust available state court remedies before resorting to federal habeas corpus. It is generally conceded that the rule derives from *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In *Ex parte Royall* the Supreme Court used language of discretion, stating at 251, 6 S.Ct. at 740:

"The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of

---

1. The children here were apparently potential members of the class in *Nguyen Da Yen.*

the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution."

Subsequent cases made it clear that the references in *Royall* to the trial court's discretion were not to be taken too seriously. It became an absolute rule that federal courts not grant writs prior to exhaustion of state remedies where no special circumstances were present. The rule in the normal state criminal law context was codified. 28 U.S.C. § 2254.

In *Fain v. Duff,* 488 F.2d 218, at 223 (CA 5 1973), the court said:

"The exhaustion of state remedies requirement is based on *Ex parte Royall, supra.* Although in *Royall* the decision to require exhaustion was left in the discretion of the district court, the requirement soon became known as a jurisdictional one. With respect to collateral attack on convictions in state court, the requirement was codified in 28 U.S.C. § 2254(b), but the requirement applies to all habeas corpus actions."

Notwithstanding the apparent broad sweep of the rule, there may be a residual area of discretion. Section 2254 contains its own exceptions, including the situation where there are circumstances rendering such process ineffective to protect the rights of the prisoner. Most of the case law defining the exhaustion requirement involves criminal prosecutions under state law.

■ If ever there was a special situation in which the Court should exercise discretion, it is the situation described in the complaint in this case. This Court should exercise discretion to entertain habeas jurisdiction against the State, Probate Court, and Foster Parent defendants unless it appears that an equally effective or more effective remedy is available in state court.

It is my opinion that the plaintiffs not only have effective remedies available in state court, but also that the available state remedies are more effective for a number of reasons than those offered here.

Unless the plaintiffs have an absolute constitutional right to custody, the final determination of custody will depend in whole or in part on issues of state law.

The trial and appellate procedures in state court and in federal court are slow at best. The delays in the trial and appellate procedure are not merely doubled, but are compounded when both state and federal courts are exercising concurrent jurisdiction over different aspects of the same controversy because the courts must resolve not only the substantive issues of the controversy, but must also be diverted in resolution of the ultimate issue to the resolution of jurisdictional problems. The delay of approximately nine (9) months from the time of filing the complaint until the time of filing of this opinion is but an example of the norm.[2]

If the plaintiffs have a constitutional right to enforce in this court, then they have the absolute right to enforce the same right in state court, and there is no reason to believe that the plaintiffs' procedural right to assert such substantive right will not be respected.

The plaintiffs' due process right to assert their alleged substantive constitutional right in state court is not merely theoretical in the State of Michigan. In *In re Mark T.,* 8 Mich.App. 122, 154 N.W.2d 27 (1967), which incidentally, preceded *Stanley v.*

**2.** For an example of the procedural morass and delay that can develop when a custody issue is litigated in state and federal courts, see a recitation of the procedural history of *In re Weldon,* 397 Mich. 225, 244 N.W.2d 827, 242–44 (1976). Subsequent to this decision, Judge Pratt in the federal branch of this litigation denied a habeas petition because of a failure to exhaust state remedies. *Weldon v. Monroe County Probate Court, et al.,* No. 40054 (E.D. Mich., Memorandum Opinion dated September 13, 1976). This denial came over three years after the federal action was instituted. The action is now being litigated in state circuit court.

*State of Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), by approximately 4½ years, the Michigan Court of Appeals ruled that the Wayne County Circuit Court had state habeas jurisdiction to entertain the petition of a person formerly in loco parentis.

*In re Mark T.* is not cited as authority with respect to the substantive rights of the plaintiffs because the Court has not yet considered such substantive rights.[3] Without determining the substantive rights of the parties, the Court does determine that the plaintiffs have, under the pleaded circumstances, at least the constitutional right to be heard in state court with respect to their claim.

There are other reasons for not entertaining federal habeas jurisdiction in this case against the State, Probate Court, and Foster Parent defendants. If this court were to exercise federal habeas jurisdiction, some further state court involvement would be necessary because supervision of the conditions of temporary custody while the children are in the homes of foster parents is necessary. The state has the judicial and social structure for such supervision. This court does not.

Furthermore, if the ultimate question of custody turns on determinations of best interest, the state courts and their ancillary social agencies are in a far better position to gather data from neutral sources to make such determination.

### III.

■ Obviously, there is no effective habeas jurisdiction in this court against the Other defendants because they have no present control over the children.

#### Conclusion

For the foregoing reasons, the Court concludes that it will not entertain jurisdiction in this case with respect to custody of any of the children or with respect to issues affecting custody.

3. An excellent summary of existing law concerning "The Fundamental Right to Family Integrity" is set forth in a three-judge opinion in

It is also appropriate for the Court to dissolve the preliminary injunction dated July 7, 1976, against the Wayne County Probate Court and Oakland County Probate Court. It is also deemed appropriate for the Court to dissolve the preliminary injunction dated September 24, 1976, against the Federal defendants.

The order to be entered pursuant to this Memorandum Opinion will contain a provision maintaining said preliminary injunctions in effect for a period of 30 days from the date of entry of the order.

*Roe v. Conn,* 417 F.Supp. 769 (U.S.D.C., M.D. Ala.1976).