UNITED STATES of America, ex rel. Matthew BRZOVICH, Petitioner-Appellant,

and

Matthew Brzovich, Plaintiff-Appellant,

v.

Ralph D. HOLTON, District Director of Immigration, United States Department of Justice, Respondent-Appellee.

No. 11267.

United States Court of Appeals Seventh Circuit.

June 1, 1955.

Irving G. Steinberg, Edmund Hatfield, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

Petitioner, Matthew Brzovich, filed his petition for a writ of habeas corpus to set aside an order of deportation; in the alternative, he petitioned for judicial review under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. The District Court discharged the writ of habeas corpus and in the same order denied review under the Administrative Procedure Act. From this order petitioner appeals.

We need not be concerned with the twofold form of relief sought because it has recently been held by the Supreme Court that the validity of a deportation order may be tested either by habeas corpus or by review under the Administrative Procedure Act. Shaughnessy v. Pedreiro, 1955, 75 S.Ct. 591. And we think that our scope of review is the same, irrespective of which procedure is employed.

The order under attack, issued by the Attorney General, charged that petitioner was present in the United States in

violation of the Act of October 16, 1918, as amended, in that he was, after entry, a member of the following class set forth in Section 1 of that Act: an alien who is a member of the Communist Party of the United States. A hearing on the order to show cause why petitioner should not be deported was held before a Special Inquiry Officer in the offices of the Immigration Service in Chicago, which culminated in a final hearing on February 5, 1953. That officer, after reviewing and analyzing the evidence, stated: "The Special Inquiry Officer has carefully examined the entire record in this matter and believes that the evidence is not of a sufficiently reasonable, substantial and probative nature to justify the conclusion that this respondent was a member of the Communist Party of the United States after entry. * * * Accordingly, an order terminating the proceedings will be entered." The officer found as a fact: "That it has not been established that the respondent was a member of the Communist Party of the United States after entry," and concluded: "That under the Act of October 16, 1918, as amended, the respondent is not subject to deportation on the ground that he is found to have been, after entry, a member of the following class, set forth in Section 1 of said Act: an alien who is a member of the Communist Party of the United States."

The Board of Immigration Appeals directed that the case be certified to it for the entry of a final order. The Board also reviewed the record in detail and in its decision, relative to petitioner, stated: "That he was a Communist Party member is established. The decision of the special inquiry officer must be reversed. Deportation will be ordered." Thereupon, a deportation order was entered on the charge stated in the warrant of arrest.

■ While numerous issues have been argued, we are of the view that the principal and controlling issue is whether the deportation order was based upon "reasonable, substantial, and probative evidence." This issue involves the question as to whether the action of the Board in its refusal to accept the finding of the Special Inquiry Officer was capricious, arbitrary and without authority of law. On this question we are without the aid of authority other than the statutory provisions and the regulations promulgated pursuant thereto. The dearth of authority is no doubt due to the fact that the present proceeding is under the Immigration and Nationality Act of 1952, in which marked changes were made in the procedure to be employed in a deportation proceeding.

Section 242(b) of the Act, Title 8 U.S. C.A. § 1252(b) provides: "A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation." This section further delineates the procedure to be employed and provides: "Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—* * * (4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." The section further provides: "The procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section. In any case in which an alien is ordered deported from the United States under the provisions of this chapter, * * * the decision of the Attorney General shall be final." (In the recent case of Shaughnessy v. Pedreiro, supra, it was held that "final" referred to the administrative procedure and not to a judicial review.)

The rules and regulations promulgated by the Immigration and Naturalization

Service pursuant to the statutory authority (17 F.R. 11469, 11514, 11515) provide among other things: "The special hearing officer shall conduct a fair and impartial hearing. No decision of deportability shall be valid unless based upon reasonable, substantial and probative evidence," and further: " * * * the special hearing officer shall, as soon as practicable after the conclusion of the hearing, prepare a written decision signed by him which shall set forth a summary of the evidence adduced and his findings of fact and conclusions of law as to deportability * * *."

The rules and regulations relative to the order to be made by the Special Inquiry Officer provide that such order "shall be (1) that the alien be deported, or (2) that the proceedings be terminated, * * * or (5) that such other action be taken in the proceedings as may be required for the appropriate disposition of the case."

 We are aware of nothing in the statute or rules and regulations which confers upon the Board any authority other than to hear oral argument on appeal. It appears evident that it is given no authority to make findings of fact or to try an issue *de novo*. It is endowed only with the typical reviewing function. This view finds support in the comments on the Act by the legislative assistant to the House Judiciary Committee, wherein it is stated: "The Board has appellate jurisdiction from: (1) Decisions of special inquiry officers in exclusion and deportation cases * * *." Title 8 U.S. C.A. page 50.

Thus the responsibility of conducting a fair and impartial hearing, with making findings of fact and conclusions of law, is placed squarely upon the Special Inquiry Officer and such findings must rest upon evidence which is "reasonable, substantial, and probative."

It appears that the Board is bound by the findings of the Special Inquiry Officer, if substantially supported, in the same manner and to the same extent as is a court of review. It is interesting and of some relevancy to note the contrast between the statutory scheme provided in this Act and that contained in the National Labor Relations Act, Title 29 U.S.C.A. § 151 et seq. In the latter Act the hearing officer makes a record with his recommendation, without findings of fact or conclusions of law. The Board is charged with the responsibility of making findings and is also empowered to hear additional testimony. Even so, courts have had difficulty in reconciling their findings of fact when contrary to the recommendation of the hearing officer, because it is the latter who sees and hears the witnesses and is thus in the better position to weigh and evaluate the testimony.

In Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 492, 71 S.Ct. 456, 95 L.Ed. 456, the court discusses the problem, with numerous pertinent observations, the net result of which is that in a case where the Board makes findings contrary to the recommendations of its hearing officer, a court on review, in determining the substantiality of the evidence, must consider and evaluate the recommendations of the hearing officer as a part of the record. Such being the case under a statute which places the responsibility of making findings not upon the hearing officer but upon the Board, the importance of the report of the hearing officer who is charged with the responsibility of making such findings, as under the instant Act, would appear to occupy a well near invincible position.

 Assuming arguendo that we are in error in our appraisement of the limited scope of review possessed by the Board, we still think that under the circumstances its action in rejecting the findings of the Special Inquiry Officer was not justified and must be characterized as capricious, arbitrary and not in accordance with law. In support of such view, we think it unnecessary to enter into a detailed discussion of the evidence.

It is sufficient to note that we have read and studied the analysis of the evidence made both by the Special Inquiry Officer and by the Board and are definitely of the view that there is no sound or logical basis for casting aside the findings of the officer who heard and saw the witnesses and who was in a better position to evaluate and weigh the testimony than the Board or this court.

Briefly, petitioner, a resident of Chicago for the past twenty-five years, came to the United States in 1915. He is married and has a son, a native born citizen of the United States. From the time he was taken into custody by the Immigration Service to the present, he has been enlarged on bail and, therefore, has not been considered a security risk. The sole witness who testified against petitioner was one Cvetic, who joined the Communist Party in 1943 as a salaried agent of the F. B. I., and who acted as a professional witness in numerous Communist trials and deportation proceedings. He testified that he met petitioner at a meeting of the Communist Party held in Cleveland, Ohio, in the latter part of 1948. His testimony on this point, however, was in some respects evasive and conflicting. The witness also testified that petitioner had sold subscriptions for a Croation language newspaper, Narodni Glasnik, published in Pittsburgh, and that petitioner had written articles for it as a correspondent in Chicago. This testimony indicated that this newspaper was controlled by the Communist Party. We have read these articles introduced in evidence and we find not a single word which would indicate that petitioner was a Communist. It is claimed that petitioner was a paid employee of the newspaper and that no persons were so employed other than Communists. The evidence on this score raises no more than an anemic suspicion. The Board in its analysis of the evidence relies upon the testimony of Cvetic "that the respondent [petitioner] was commonly referred to as a member of the Communist Party by other Communists who considered him a responsible and active member in the Chicago area," and that "his experience [that of the witness] revealed that only persons who are Party members are hired to work on the staff of the paper and that assignments to jobs on the newspaper are made by the Communist Party." This testimony was hearsay and has no more probative value than the tattlings from a town meeting. Surely this evidence does not meet the strict standard which Congress has erected, that is, that the evidence must be "reasonable, substantial, and probative."

We are left in doubt from respondent's brief as to whether he takes serious issue with our view as to the limited function of the Board. Rather, the Board's action is sought to be justified on a theory that its decision was only one of law, that is, that the hearing officer erred as a matter of law in deciding that the evidence of petitioner's membership in the Communist Party was not "reasonable, substantial, and probative." It is pointed out that the hearing officer made no finding as to the credibility of the witness Cvetic. This is merely a play upon words. True, he did not employ that particular characterization but it is inherent in the findings which he did make that he regarded the testimony of the witness as unbelievable and incredible. Assuming that issues of law are involved, it must be conceded that such issues rested upon a factual premise which involved the weight to be attached to testimony of Cvetic, a determination of which was the function of the hearing officer.

Moreover, if we accept respondent's theory that the Board in reversing the hearing officer decided only an issue of law, we are still confronted with making a decision on the same issue, and we think it is not open to question but that our scope of review is at least as broad as that of the Board. Certainly we are charged with the responsibility of deciding questions of law. We agree with the Special Inquiry Officer that the proof was insufficient to justify a finding that petitioner was a member of the Communist Party. We agree, whether the issue

be treated as factual or legal. It follows that any legal issue decided by the Board to the contrary was, in our judgment, erroneous.

The order appealed from is reversed, the deportation order entered against petitioner is vacated, with directions that the proceedings against him be terminated, as directed by the Special Inquiry Officer.