Petros **PRASSINOS**, Plaintiff,

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**Civ. No. 35647.**

United States District Court
N. D. Ohio, E. D.
June 3, 1960.

Phillip Bartell, Cleveland, Ohio, for plaintiff.

James C. Sennett, Jr., Asst. U. S. Atty., Cleveland, Ohio, for the Government.

CONNELL, Chief Judge.

This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201, whereby plaintiff, an alien seaman, petitions this Court to cancel as invalid an order for deportation, issued May 21, 1957 by the Immigration and Naturalization Service of the Department of Justice. The District Director of Immigration and Naturalization opposes the declaratory judgment action, and moves for summary judgment and the vacation of plaintiff's temporary stay of his deportation order.

The salient facts appear from the record to be as follows: The plaintiff Petros Prassinos is a fifty-year-old, married, male alien, and is a native and citizen of Greece. He first arrived in the United States on July 28, 1956, as a member of the crew of the S.S. Gannez. He subsequently shipped on this vessel when it sailed for Germany. Prassinos next arrived in this country on September 21, 1956, as a crewman on this same vessel as it returned from Germany. He was on this vessel as it again left the United States, and one day out Prassinos became so ill that the Gannez's captain radioed the Coast Guard, and Prassinos was picked up and transported to the United States Public Health Service Hospital in Brighton, Massachusetts, where he remained until October 5, 1956. Under these circumstances, the plaintiff was admitted as a non-immigrant crewman under the provisions of Section 101(a) (15) (D) and 252 of the Immigration and Nationality Act (hereinafter called the Act), 8 U.S.C.A. § 1101. This permit granted Prassinos the privilege of voluntarily re-shipping foreign on any vessel within a maximum time of twenty-nine days, making the latest permissible date of stay the

20th of October, 1956. Prassinos was discharged from the hospital on October 5, 1956, and was immediately advised by immigration authorites that preparations had been made for him to take passage as a passenger on a vessel departing the next day from New York, for which purpose the owners of the vessel on which he had previously worked had deposited one thousand dollars as bond. Instead of departing October 6th, or requesting permission to remain until October 20th, Prassinos absconded to the home of his cousin in Martins Ferry, Ohio. He remained in that vicinity for some seven months until he was apprehended on May 10, 1957. On May 13, 1957, an order to show cause why he should not be deported from the United States and a warrant of arrest were issued and served on the alien. On May 21, 1957, a hearing was held before a Special Inquiry Officer, after which the plaintiff was found deportable under the provisions of Section 241(a) (2) of the Act, in that after admission as a non-immigrant under Section 101(a) (15) of the Act, he had remained in the United States for a longer time than permitted. After the hearing, upon specific request of the alien, he was again granted the privilege of voluntary departure at his own expense, in lieu of deportation. Subsequent to this, prior to any attempt at voluntary departure, the plaintiff was prosecuted and convicted in Federal District Court for the Southern District of Ohio on October 15, 1957, in that he had wilfully remained in the United States in excess of the number of days allowed in violation of 8 U.S.C.A. § 1282(c). This conviction was affirmed by the Sixth Circuit on July 18, 1958 (Kotsampas v. United States, 257 F.2d 64), and the Supreme Court denied certiorari on January 5, 1959. On February 4, 1959, Prassinos began serving a six-month sentence in the Federal Correctional Institution at Milan, Michigan. In early April, 1959, he was granted a parole for the purpose of deportation only. At this time, he again was given the privilege of voluntary departure, pursuant to the order of the Special Inquiry Officer discussed above. Plaintiff, however, declined this privilege, claiming that he needed time to press a claim against a Chicago employer before the Illinois Industrial Commission.

On May 19, 1959, Prassinos was released from prison and a stay of deportation of sixty days was granted him by the Detroit Immigration Office for the purpose of pressing this claim before the Commission. A further stay until September 1, 1959 was subsequently granted by the Cleveland office for the same reason, and he ultimately received an acceptable settlement of his claim.

The plaintiff surrendered himself on September 17, 1959, at Cleveland, Ohio, for deportation, and thereupon was transported to New York City. A day prior to his scheduled departure his attorney filed an application for a writ of habeas corpus in the United States District Court for the Southern District of New York. This application, however, was subsequently withdrawn and the petitioner returned to this jurisdiction upon order of the Sixth Circuit Court of Appeals, dated October 21, 1959. That order, temporarily staying the execution of the deportation order, directed a hearing in this district on the plaintiff's present petition for declaratory judgment.

▆▆▆▆ Initially, it should be noted that a petition for declaratory judgment is a proper method of seeking judicial review of an order of deportation under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq. This is so because Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, considerably broadened the scope of judicial review of otherwise final agency orders. See Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. However, the scope of review is exactly the same when either type of relief is sought, and the appellate tribunal (the district court in this type of case) has no authority to try the case de novo. United States ex rel. Brzovich v. Holton, 7 Cir., 1955, 222 F.2d 840; Cruz-Sanchez v. Robinson, D.C.S.D.Cal.1955, 136 F. Supp. 52.

While numerous issues have been raised by plaintiff concerning facts that are alleged to have occurred after the finding of the Special Inquiry Officer, *the relief requested in this action for declaratory judgment limits us to a review of the finding of illegal overstay* of the entrance permit and subsequent order of deportation issued by the Special Inquiry Officer.

■ Section 242(b) of the Act, 8 U.S. C.A. § 1252(b), sets forth various procedural safeguards which must be followed before an order of deportation can be issued. These safeguards include the right to reasonable notice, the right to counsel, the right to present evidence and to cross-examine, and the mandate that no decision of deportability shall be valid unless it is based upon reasonable, substantial and probative evidence. This same section further states that "the procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section". If, from the record, it appears conclusively that all of plaintiff's rights were safeguarded, and that the decision was based on the requisite evidence, we are compelled to grant defendant's motion for summary judgment.

■ It is worthy of note that at no time prior to or during the hearing held by the Special Inquiry Officer did the alien claim he was in this country legally. All the admitted facts at the hearing, facts which even to this date are not denied or controverted, point clearly to an opposite conclusion. It has been suggested that because Prassinos was informed that passage had been booked for him prior to the expiration of the statutory twenty-nine day permit period, that this in some way affected his status at the end of this period. Why this is so is not apparent to us, nor is it in any intelligible way explained to us in plaintiff's brief in support of his present action. A glance at Section 252 of the Act, 8 U.S. C.A. § 1282, indicates that twenty-nine days is simply the statutory maximum during which an alien crewman may remain in the United States under temporary permit. Prassinos was allowed to enter because of serious illness. Once this illness was cured, no further reason remained for his prolonged stay. Nothing in the statutory language of Section 242 indicates, as plaintiff implies, that the privilege of temporary entrance in the United States ripens into a right that allows the alien to remain up to the twenty-nine day period as he shall choose. Any such reading of the statute flagrantly violates the purpose for which the permit was issued in the first place, i. e., to afford Prassinos emergency medical care. In any event, this Court cannot comprehend plaintiff's claim that his subsequent flight can suddenly transform what would have been illegal without flight into a justifiable extension of the privilege of temporary entry. If Prassinos felt in need of remaining in the country the maximum length of time allowable under the statute, his remedy was appeal to the proper authority, not unjustifiable flight.

■ Once this question is decided adversely to the plaintiff, it becomes manifest from the proceedings before the Special Inquiry Officer that Prassinos was ordered deported only after he was afforded all the safeguards outlined in Section 242 of the Act, supra. Although Prassinos did not have counsel, it was because he specifically indicated that he did not desire counsel. The statute does not direct that counsel be appointed in every case, regardless of the alien's wishes in this respect. Indeed, the testimony elicited at the hearing so clearly showed Prassinos to be illegally in the United States that even if counsel had been appointed or retained by the alien the result could have been no different. Plaintiff's presently-retained counsel raises this question of lack of counsel, but offers no acceptable suggestion why the hearing was not conducted in both an authorized and just manner, nor does he presume even now to indicate the basis for his claim that plaintiff is legally within the country.

■ Several ancillary questions raised in the pleadings are worthy of comment,

although their resolution does not seem necessary for decision in this present action. Various mention in plaintiff's briefs is made concerning Prassinos's "right" to voluntary departure as affecting the legality of his present status in the country. As we read Section 242(e) of the Act, voluntary departure is not a right but a privilege that is granted an alien solely at the discretion of the Attorney General of the United States. No "basic", or "inherent", or "constitutional", or any other kind of right is involved in the alternative order of the Special Inquiry Officer. The choice of the type of order was clearly within the Inquiry Officer's discretion, and the fact that Prassinos had already fled once illegally made the order substantially an act of administrative largess. Prassinos obviously did not take advantage of the privilege of voluntary departure before he was prosecuted for wilfully remaining in the United States in excess of the number of days allowed. His subsequent conviction was affirmed by the Sixth Circuit in 257 F.2d 64, thus this question is not before us. Once more, even though he had absconded once and had been incarcerated in the interim, Prassinos was again offered the privilege of voluntary departure. This time he refused to take advantage of the offer, but instead chose to press the claim before the Illinois Industrial Commission. Although it was within the power of the Attorney General, through his authorized agents, to deport Prassinos immediately after his release from prison, he was allowed to remain at his request to further press his claim. And he was given two successive extensions before the claim was finally terminated satisfactorily. Thus it seems that, contrary to plaintiff's pleas, he was given every right that was his and actually was granted extensive privileges and benefits, both in his original hospitalization and treatment and in the several extensions of his deportation order.

We agree that it is unfortunate that circumstances were such that to voluntarily depart might have deprived him of an equitable financial settlement of his claim for injury on the job, but the very fact of his injury can be traced directly to his own illegal action in wilfully failing to leave the country on the date required. On the whole, he has been most kindly treated.

■ Much has been said by plaintiff's counsel concerning what he considers the inherent unfairness of our immigration laws. We will not belabor the obvious by reminding him that we are a court of law and not the legislature, and that such unsolicited and unwarranted attacks on duly-enacted legislation have no proper place before us. However, we will reiterate what we have emphasized above; simply that regardless of the equity of these laws in general, their application in this case was over-abundantly fair. Plaintiff has been illegally within this country for three and one-half years. Every additional day that he remains here illegally works an additional unfairness, not against him, but against those thousands of refugees who daily are striving to secure legal entrance into the country, and all of whom have at least equal claim to the privilege of United States residence and citizenship as has this alien.

It is this Court's conclusion after an examination of the complete record before it that plaintiff's motion for declaratory judgment should be denied, and defendant's motion for summary judgment and dismissal of the action should be granted. Additionally, because of the above conclusion, plaintiff's temporary stay of execution pending a hearing is hereby vacated, and plaintiff's motion for an oral hearing is denied. An order may be prepared in accordance with the foregoing.