Mark David JOHNS, et al., Plaintiffs-Appellants, Cross Appellees,

v.

DEPARTMENT OF JUSTICE OF the UNITED STATES, et al., Defendants-Appellees,

Angela Macias-Rosales, Intervenor-Appellee, Cross Appellant.

Nos. 80–5135, 81–5062.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1981.

Rehearings Denied Sept. 2, 1981.

Joseph Nazzaro, North Miami Beach, Fla., Philip Dennis, Financial Planning Consultant, North Miami Beach, Fla., for plaintiffs-appellants, cross appellees.

Atlee W. Wampler, III, U. S. Atty., Peter Nimkoff and Richard A. Marshall, Jr., Asst. U. S. Attys., Miami, Fla., for defendants-appellees.

Elizabeth S. Baker, Legal Serv. of Greater Miami, Inc., Miami, Fla., Kathy Hamilton, Coral Gables, Fla., for Macias-Rosales.

Theodore Klein, Miami, Fla., Guardian Ad Litem for minor child Cynthia.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

Almost a full year has passed since this Court, in *Johns v. Department of Justice*, 624 F.2d 522 (5th Cir. 1980), considered an appeal from an order of a district court refusing to stay the deportation of Cynthia, then a four-year-old child, who, when she was one day old, had been brought to the United States from Mexico, where she had been born. The immigration judge, after a deportation hearing, had concluded that Cynthia had been brought to the United States illegally and had found her deportable. This decision had been affirmed by the Board of Immigration Appeals, which, however, had granted Cynthia the privilege of voluntary departure. Pursuant to an INS warrant issued on January 30, 1980, Cynthia had been taken from the Johns and had been placed in an institution under the care of Catholic Services Bureau (CSB), for what was then proposed to be a period of 48 to 72 hours, pending arrangement of air transportation to Mexico.

No appeal had been taken from the Board's final order. Instead, Mark and Eileen Johns, who had brought Cynthia to the United States shortly after her birth and who had reared her as their daughter since then, had filed suit to enjoin her deportation and for a writ of habeas corpus commanding that she be returned to their custody. Her natural mother, Angela Macias-Rosales, sought to intervene. She contended that the Johns had taken Cynthia illegally and asked that her child be returned to Mexico. The United States had sought dismissal of the proceeding. The district court had denied the Johns' motion in its entirety and had denied Mrs. Macias-Rosales' motion to intervene. The Johns had then filed an appeal to this Court.

Because Cynthia had not been represented in the deportation proceeding, we remanded the case to the district court with instructions to appoint a guardian ad litem

to represent Cynthia, to enjoin execution of the deportation order, and to direct the INS to conduct all further proceedings involving Cynthia contradictorily with her guardian ad litem.[1]

It was apparent to all that, in view of her age, the temporary situation was traumatic to Cynthia and its protraction was undesirable. We had no jurisdiction to determine what her personal welfare required, however, because the only issues before us were whether her deportation should be enjoined and whether habeas corpus should be granted to the Johns. Contemplating further INS action, we ordered it to be completed within sixty days and further ordered subsequent district court proceedings to be completed within thirty days thereafter. To avoid further appellate delay, we retained jurisdiction.

Events thereafter, unfortunately, perhaps due to no one's fault or more likely due to the fault of everyone but Cynthia, and to Cynthia's continued detriment, took the leisurely course we had hoped to avoid. Our opinion was issued on August 1, 1980. On August 6, the district judge appointed Theodore Klein, Esq. and Rebecca Poston, Esq., both members of the Florida bar, as guardians ad litem for Cynthia. On August 22, the Johns filed a motion seeking her release to their custody pending resolution of the case. This was accompanied by psychiatric and psychological reports stating that the Johns were Cynthia's "psychological parents" and that she should be returned to their care immediately lest she suffer permanent psychological harm. Cynthia's mother countered with a motion to deny the Johns' motion. The INS opposed the Johns' motion on the grounds, inter alia, that the Johns might flee and that it was doubtful that they provided a desirable home environment. Mr. Klein, as guardian ad litem,[2] also opposed the Johns' motion. On September 23, the district judge denied the motion.

1. We also granted Mrs. Macias-Rosales' motion to intervene in support of the judgment of the district court.

2. While the district court appointed both Mr. Klein and Ms. Poston as guardians ad litem, the

pleadings and letters in the file have been signed only by Mr. Klein. We shall, therefore, refer to the court-appointed guardians as the "guardian ad litem."

Meanwhile, on September 5, the federal defendants, represented by the Assistant U.S. Attorney, called the district court's attention to the passage of time since the entry of this Court's order and to the failure of either the INS or the guardian ad litem to institute any proceedings. The federal defendants recommended the appointment of a psychiatric and a psychological expert to assist the guardian ad litem. In apparent response to that action, the guardian ad litem petitioned this Court and we granted an additional fifteen days for completion of INS proceedings.[3]

On October 30, Mr. Klein filed a request with the INS District Director for a "stay of deportation." In the letter requesting the action, he recommended that "custody" be decided by a Florida court. On November 12, the District Director granted the stay by a letter addressed to Mr. Klein. The letter states, in part:

It is very evident from its decision that the Circuit Court is troubled by the fact that Cynthia Johns was not specifically represented by Counsel during the previous legal proceedings. The Court points out that even though Mr. and Mrs. Johns were frequently represented by Counsel, their interests do not necessarily coincide with those of Cynthia. The thrust of the Circuit Court's decision is that Cynthia's interests must be considered before a final decision is made regarding her deportation from the United States.

\* \* \* \* \* \*

On the basis that the custody of Cynthia Johns will be litigated, and hopefully decided in a Florida Court proceeding, I am granting your request for a Stay of Deportation pending the outcome of those proceedings.

Mrs. Macias-Rosales promptly filed a motion requesting the federal District Court to order Cynthia's deportation or, in the alternative, to declare the INS to be "without further authority to detain the child" and to "release the child forthwith to the natural mother." The Johns opposed the motion and asked the Court to order the "immediate release of Cindy" to them.

Meanwhile, on December 5, the guardian ad litem filed a proceeding in the Family Division of the Florida state trial court [4] "to determine the legal custody of Cynthia [Johns]." Mrs. Macias-Rosales, opposing his petition, disputed that court's jurisdiction. From the Family Court's decision that it had jurisdiction, she appealed. That appeal is now pending in the Florida Third District Court of Appeals.[5]

The federal District Court treated the pleading filed before it as an application for review of the INS order staying deportation, and denied it on the basis that the District Director has discretion to determine whether to proceed with or to stay a deportation, and that no abuse of discretion had been shown. The District Judge added:

A determination as to the legal custodian of Cynthia is a factor of the utmost importance as to whether or not she will be deported. For that reason, the Guardian Ad Litem's report supports the Director's stay to allow further proceedings to de-

---

3. This extension permitted proceedings to continue until November 15, 1980. The guardian ad litem, apparently believing the entry of the stay by the INS relieved the INS and the guardian of responsibility to complete "all proceedings" by that date, did not communicate further with this Court until, in response to our request, he filed a brief on the issues raised by the present appeal.

4. The action was filed in the Circuit Court of the 11th Judicial District in and for Dade County, Florida.

5. Counsel inform us that the last brief in the state appellate court has not yet been filed and that the court's decision cannot be expected

before October or November 1981. If jurisdiction is sustained, further proceedings in the state trial court will be necessary to determine what is in Cynthia's best interests. Its ultimate decision may be appealed. The guardian ad litem has informed us that he will act on the basis of the Florida trial court's decision, and will not abide an appeal to take further action. His action, however, will not dictate a course to the INS. Although the INS has assured us that it also will be guided by the state court's decision, this does not necessarily mean that it will accept a trial court decision that has been appealed and is being bitterly contested.

termine what is in the best interests of Cynthia.

The Johns and Mrs. Macias-Rosales both filed a new appeal from this order, apparently without noting our retention of jurisdiction in the habeas corpus action, Case No. 80–5135. Because the new appeal was separately docketed as Case No. 81–5062, and none of the parties called special attention to it or requested expedited action, the case was handled routinely—as it should never have been—and its pendency did not reach this panel's attention until briefing under the usual schedule was completed. Thus, the litigants, most of all Cynthia, who assuredly is the only completely innocent party, have again been victims of delays in the legal process.

In March 1981, Cynthia was finally transferred from the CSB institution to the care of a foster family under CSB supervision. She was attended by an INS guard 24 hours a day until July 23, when the CSB succeeded in having the guard removed. She remains in the foster home, her stay indefinite, her future uncertain. Recognizing this, as soon as the case again reached our attention, we suggested oral argument by conference telephone. All parties consented to this procedure and the case was orally argued. We now order the two nominally separate matters consolidated and consider both in this opinion.

### I.

Two INS hearings and a sheaf of ex parte representations by those who contend for Cynthia's custody leave the history of her separation from her mother and her entry into the United States still disordered. The following facts are culled from the INS hearing and the many documents filed in the various proceedings to which Cynthia has been subjected.

It appears certain that Cynthia is an alien, of Mexican nationality, and that Angela Macias-Rosales is Cynthia's natural mother. Mrs. Macias-Rosales is 33 years of age, has two children, a girl about three years old and a boy about two years old, who reside with her in Rosarito, Baja California, where she now operates a restaurant. Whether she is married to the person who is the father of these children and of Cynthia is disputed. There are representations that this man is married to someone else and cannot obtain a divorce. There is an account that Mrs. Macias-Rosales has two older children, aged ten and eleven, who live with her mother.

In 1975, the Johns went to Tijuana, Mexico, to adopt a child. They met Mrs. Macias-Rosales, apparently as a result of arrangements by intermediaries. They visited her in the hospital where Cynthia was born, and left the hospital with Cynthia the day after the child's birth. They secured a Mexican birth certificate showing them as her natural and lawful parents, and, representing Cynthia to be their child, entered the United States. They, therefore, appeared to need no visa for her and had none.

Mrs. Macias-Rosales contends that the Johns kidnapped Cynthia. She has been attempting to locate Cynthia and secure the child's return since the Johns left Mexico or shortly thereafter. The Johns claim that Mrs. Macias-Rosales surrendered Cynthia to them for adoption and that their procurement of a birth certificate was a de facto "informal" adoption. There is evidence that the Johns knew that this did not suffice as an adoption. There is evidence for and against the parental fitness of both the Johns and Mrs. Macias-Rosales.

After an INS hearing in California, the Immigration Judge found Cynthia to be deportable, but withheld his final decision for six months. He envisioned that the Johns might be able to adopt Cynthia by proceeding in California state courts and that this might enable Cynthia to remain in the United States. After the six-month period had elapsed, finding that the California courts had taken no action on the merits, the Immigration Judge ordered that Cynthia be deported. Thereafter, the Johns fled with Cynthia to Florida, where they were located several years later. After being located, they failed to report to the INS as they had apparently promised. The INS, therefore, secured a warrant for Cynthia's

detention and refuses to return her even temporarily to their control.

## II.

■ The Attorney General has primary responsibility for enforcing the statutes requiring the deportation of persons who are not lawfully in the United States. An alien is deportable if he has entered the United States unlawfully without an immigrant visa, 8 U.S.C. § 1251(a), and for a number of other reasons. *See, e. g.*, 8 U.S.C. § 1251.[6] Aliens who are determined to be deportable, "shall be deported" upon the order of the Attorney General. 8 U.S.C. § 1251. His responsibility in this regard is akin to his responsibility for enforcing the criminal laws: in both situations, he has discretion to refrain from instituting proceedings even though grounds for their commencement may exist. *See* C. Gordon & H. Rosenfield, Immigration Law and Procedure § 5.3e(1) (1981).

If the Attorney General has reason to suspect that an alien is subject to deportation, he may arrest the alien, 8 U.S.C. § 1252(a), or commence deportation proceedings without taking the alien into custody.[7] The Attorney General discharges his responsibility for enforcing the deportation laws through the INS, a division of the Department of Justice, to which he has delegated many of his responsibilities under the immigration laws.[8] The District Director of the INS, therefore, normally makes the decision to institute deportation proceedings. An immigration judge (formerly called a special inquiry officer) then conducts proceedings to determine the alien's deportability. *Id.* at § 1252(h). This is the "sole and exclusive procedure for determining the deportability of an alien" under the sections of law here involved. 8 U.S.C. § 1252(b).[9] The immigration judge is empowered to make all decisions necessary to dispose fully of the case and may order that the alien be deported, that the proceedings be terminated favorably to the alien, or that discretionary relief should be afforded. The immigration judge's order is final, subject, of course, to further administrative and eventual judicial review.

Deportation orders entered by immigration judges are reviewed initially by the Board of Immigration Appeals (BIA).[10] The BIA is a delegate of the Attorney General and exercises the Attorney General's reviewing authority in deportation cases. The BIA's decision, absent excep-

---

6. A former commissioner of the INS estimated that as many as 700 grounds for deportation exist. Hearings on H.R. 4974 before the Subcommittee of the Senate Committee on Appropriations, 83d Cong. 1st Sess. 250 (1954).

7. Although, before 1956, every deportation proceeding was commenced with an arrest, such proceedings are now customarily initiated by an order to show cause. *See* 21 F.R. 99–101; 8 C.F.R. § 242.1. An alien is now arrested only if the public interest requires incarceration or there is a substantial basis for a belief that the alien will flee. *See generally* C. Gordon & H. Rosenfield, Immigration Law and Procedure §§ 5.3a & 5.4a (1981).

The initial INS action taken in this case was the issuance of an order to show cause why Cynthia should not be deported. Only after the Johns absconded to Florida with Cynthia did the INS detain the child.

8. *See* 8 U.S.C. § 1103(a); 8 C.F.R. 2.1 & 103.1.

9. The statute exempts from deportation on certain grounds "an alien otherwise admissible at the time of entry" who is the "child of a United States citizen," 8 U.S.C. § 1251(f), and provides for adjustment of status of other aliens, 8 U.S.C. § 1255, as well as for suspension of deportation of persons who have been present in the United States for lengthy periods. 8 U.S.C. § 1254. The term "child" for purposes of admission to the United States includes an adopted child and a child who is an orphan or who has been abandoned. 8 U.S.C. § 1101(b)(1)(F).

In addition, from time to time Congress has enacted statutes providing special provisions to permit alien refugees to remain in this country by authorizing the Attorney General to adjust their status. *See, e. g.*, as to certain refugees, Act Nov. 2, 1966, P.L. 89–732, §§ 1–5, 80 Stat. 1161; and Act Oct. 20, 1976, P.L. 54–571, § 8, 90 Stat. 2706; as to Indochina refugees (Vietnam, Laos or Cambodia), Act of Oct. 28, 1977, P.L. 95–145, Title I, §§ 101–107, 91 Stat. 1223; as to Cambodian refugees, Act Nov. 9, 1978, P.L. 85–624, § 16, 92 Stat. 3465.

10. Before jurisdiction rests in the BIA, the alien is permitted to request that the immigration judge reopen the proceedings. *See* 8 C.F.R. 242.22.

tional circumstances, is administratively final,[11] subject only to judicial review.

The Attorney General has six months after the order of deportation becomes final in which to effect the alien's departure from the United States. 8 U.S.C. § 1252(c). During this six month period, the Attorney General has discretion to determine whether the alien should be detained or released on bond or conditional parole. 8 U.S.C. § 1252(c). At the termination of the six months, pursuant to a warrant of deportation issued by the district director, 8 C.F.R. § 243.2, the alien may be deported. If deportation during this time has not been "practicable, advisable, or possible or departure of the alien ... has not been effected within such six month period," the alien is subject to further supervision although detention is not permitted. 8 U.S.C. § 1252(c) & (d). See also 8 C.F.R. § 242.2(d), containing the Attorney General's delegation of his supervisory power to the District Director.

### III.

Deportation is not, however, the inevitable consequence of unauthorized presence in the United States.[12] The Attorney General is given discretion by express statutory provisions, in some situations, to ameliorate the rigidity of the deportation laws. In other instances, as the result of implied authority, he exercises discretion nowhere granted expressly. By express delegation, and by practice, the Attorney General has authorized the INS to exercise his discretion. In fact, not only does the INS, as the Attorney General's surrogate, exercise his quasi-prosecutorial discretion to commence or not to commence deportation, but even after a final order of deportation has been entered, the District Director exercises discretion to afford aliens relief from deportation.

If the Attorney General decides that an alien is unlawfully in the country, and should not be permitted to remain, he may permit the alien to depart voluntarily at the alien's expense, see 8 U.S.C. § 1254(e), 8 C.F.R. 243.5; Boulamandis v. Brownell, 247 F.2d 83 (D.C.Cir.1957), so that the alien's record will not show that he was involuntarily deported, thus creating a barrier to possible future lawful return. See C. Gordon & H. Rosenfield, Immigration Law and Procedure § 5.18b (1981); Comment, Suspension of Deportation: Illusory Relief, 14 S.D.L.Rev. 229, 253 (1976). The Attorney General is also authorized to "withhold deportation" of any alien to any country if the alien's life or freedom would be threatened there on account of race, religion, nationality, membership in a particular social group, or political opinion.[13] 8 U.S.C. § 1253(h).

The Attorney General also determines whether (1) to refrain from (or, in administrative parlance, to defer in) executing an outstanding order of deportation,[14] or (2) to stay the order of deportation. Although such a stay is usually designed to give a deportee a reasonable amount of time to make any necessary business or personal arrangements, both the length of and reason for the stay lie entirely within the discretion of the Attorney General or his delegate.

The Attorney General has adopted regulations[15] giving the District Director discretionary authority, either on his own or on

---

11. 8 C.F.R. 3.1(d)(1), (2) & (h) recognize circumstances under which the BIA ruling can be referred to the Attorney General.

12. Until 1940 "the deportation statute unyieldingly demanded that an alien illegally in the United States be deported." See C. Gordon & H. Rosenfield, Immigration Law and Procedure § 7.2a (1981).

13. Although not applicable to this proceeding, several other forms of discretionary relief are available to the district director. See, e. g., Kwon v. United States, 646 F.2d 909 (5th Cir. 1981) (en banc) (adjustment of status).

14. See O.I. 103.1(a)(1)(ii) (1975). The factors considered when deciding whether deferred action is appropriate include: (1) advanced or tender age; (2) long-time residence in the United States; (3) medical condition; (4) familial effects; and (5) criminal conduct. See generally, C. Gordon & H. Rosenfield, Immigration Law and Procedure § 5.3e (1981); Wildes, The Nonpriority Program of the Service, 53 Int'l Rel. 25 (1976).

15. The complete text of the applicable regulation reads as follows:

the request of a party, to stay an order of deportation for such time and under such conditions as the director thinks necessary. Neither the statute nor the regulations permit an administrative appeal from a decision regarding a requested stay to an immigration judge or the BIA. 8 C.F.R. 243.4. *See Matter of Paduano*, 13 I.N.S. 658 (1971). Although both these forms of discretionary relief were here requested by the guardian ad litem, the request for deferred action was postponed by the District Director until the termination of the state court proceeding. The district director's action was limited to granting a "stay of deportation."

## IV.

■ The entry of a final order of deportation or final action on a request for discretionary relief is subject to judicial review. Such review, of course, does not entail the substitution of a court's judgment for that of the Attorney General or the designees who exercise his power. *See, e. g., Foti v. INS*, 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281, 290 (1963). The Attorney General's order must be affirmed unless there has been an abuse of discretion or a complete failure to exercise discretion.

The forum for judicial review depends, however, on the nature of the challenged action. Jurisdiction to review "all final orders of deportation . . . made against aliens within the United States pursuant to administrative proceedings under [8 U.S.C. § 1252(b)]" lies exclusively in the courts of appeals. 8 U.S.C. § 1105a(a). *See* 5 U.S.C. §§ 1031–1042 (The Hobbs Act). Such a petition for review, however, may not be filed more than six months after the date of the final order of deportation.

The scope of the term "final orders of deportation" is not, of course, self-defining. Recognizing the desirability, reflected in 8 U.S.C. § 1105a, of minimizing multiple review, the Supreme Court held in *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), that the term includes in addition to the actual order of deportation, all orders closely related to the deportation proceeding and entered during deportation proceedings conducted pursuant to 8 U.S.C. § 1252(b), such as the denial of voluntary departure or adjustment of status. *See also Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam).

If, on the other hand, ancillary determinations, such as granting a stay of deportation,[16] are made outside the context of a proceeding under 8 U.S.C. § 1252(b), jurisdiction to review initially is not given to the

§ 243.4 Stay of deportation.
Any request of an alien under a final administrative order of deportation for a stay of deportation, except a request for withholding of deportation pursuant to section 243(h) of the Act, shall be filed on Form I–246 with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, *in his discretion*, may grant a stay of deportation for such time and under such conditions as he may deem appropriate. Written notice of the disposition of the alien's request shall be served upon him and any notice of denial shall include specific reasons therefor; however, neither the making of the request nor the failure to receive notice of disposition of the request shall relieve the alien from strict compliance with any outstanding notice to surrender for deportation. Denial by the district director of a request for a stay is not appealable but such denial shall not preclude the Board from granting a stay in connection with a motion to reopen or a motion to reconsider as provided in Part 3 of this chapter, nor such denial preclude the special inquiry officer, in his discretion, from granting a stay in connection with, and pending his determination of, a motion to reopen or a motion to reconsider a case falling within his jurisdiction pursuant to § 242.22 of this chapter, and also pending an appeal from such determination. [29 FR 6485, May 19, 1964] (Emphasis supplied.)
8 C.F.R. § 243.4.
While the request for a stay must be made on Form I–246, the proceeding is informal and the procedural safeguards of the Administrative Procedures Act are arguably inapplicable. *See Dimaren v. INS*, 398 F.Supp. 556 (S.D.N.Y. 1975).

16. Requests for stays of deportation have been considered by the courts in a variety of circumstances. *See, e. g., Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977) (involving deportation of the alien parents of a five-month-old citizen and the citizen); *Mendez v. Major*, 340 F.2d 128, 131 (8th Cir. 1965); *Enciso-Cardozo v. INS*, 504 F.2d 1252, 1253 (2d Cir. 1974) (involving the right of an infant to intervene in review of his mother's request for extended voluntary

courts of appeals. *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). Such ancillary administrative actions are subject to review in declaratory judgment actions, or by requests for injunctions, in the district courts under the Administrative Procedure Act, 5 U.S.C. § 702, and under 8 U.S.C. § 1329, an independent grant of jurisdiction, to the district courts, of cases arising under the immigration laws.[17] *See* C. Gordon and H. Rosenfield, Immigration Law and Procedure § 8.8 (1981); Currie & Goodman, Judicial Review of Federal Administrative Action: Quest for the Optimum Forum, 75 Colum.L.Rev. 1, 32 (1975). *See also* Comment, Judicial Review of Final Orders of Deportation, 42 N.Y.U.L.Rev. 1155 (1967).

The right of the INS to hold an alien in custody pursuant to an order of deportation may also be challenged by application for a writ of habeas corpus. 8 U.S.C. § 1105(a).[18] In such an action, brought initially in the district court, the alien may challenge the legality and constitutionality of his confinement by the INS.

## V.

With these jurisdictional lines in mind, we examine the proceedings before us to determine first, whether the District Court had jurisdiction of the proceedings involved in case No. 81–5062. Five days after the District Director granted what he termed a "stay of deportation," Mrs. Macias-Rosales filed a motion in the district court requesting that the court either order deportation or declare that the INS is without authority to detain Cynthia and order that the child be released to her natural mother. Shortly after that motion was filed, the Johns filed a pleading[19] urging the court to deny Mrs. Macias-Rosales' motion and order the immediate release of Cynthia to their custody. The guardian ad litem, arguing in support of the INS action, opposed both of these motions.

The Johns and Mrs. Macias-Rosales are both "aggrieved parties"[20] within the meaning of the Administrative Procedure Act. 5 U.S.C. § 702. They were, therefore, proper persons to appear in the district court.

The district court, treating the two motions as requests to review the entry of the stay, held that the District Director's action was not arbitrary or capricious, and refused to vacate it. The relief sought by

departure); *Ferreira v. Shaughnessy*, 241 F.2d 617 (2d Cir. 1957) (court declined to review refusal to suspend deportation to alien who would receive compensation award only if he remained in the United States); *Prassinos v. District Director*, 193 F.Supp. 416 (N.D.Ohio 1960), *aff'd* 289 F.2d 490 (6th Cir.), *cert. denied*, 366 U.S. 966, 81 S.Ct. 1925, 6 L.Ed.2d 1256 (1961) (stay requested to prosecute workmen's compensation claim); *Polites v. Sahli*, 302 F.2d 449 (6th Cir.), *cert. denied*, 371 U.S. 916, 83 S.Ct. 259, 9 L.Ed.2d 175 (1962) (incapacitating heart condition); *Roumeliotis v. INS*, 304 F.2d 453 (7th Cir.), *cert. denied*, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962) (stay requested pending passage of private bill in Congress); *Dentico v. INS*, 303 F.2d 137, 138 (2d Cir. 1962) (incapacitating physical condition); *Melone v. INS*, 355 F.2d 533 (7th Cir. 1966) (desire to visit mentally ill brother).

17. The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter.
8 U.S.C. § 1329.

18. *See Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1203 & n.16 (9th Cir. 1975). If the person is not in federal custody, these proceedings are subject to the usual requirement that state remedies be exhausted. *See Huynh Thi Anh v. Levi*, 427 F.Supp. 1281 (E.D.Mich.1977), *aff'd*, 586 F.2d 625 (1978).

19. The pleading was styled "Answer In Opposition To Intervenor's Motion For Deportation Or Release".

20. We held in our prior opinion that the Johns "patently lack legal standing to represent" Cynthia. 624 F.2d 522, 523. That does not mean, however, that they lack standing to participate in the agency and District Court proceedings or to seek review, in this Court, of determinations adverse to *their* interests. To the extent necessary to satisfy Article III, they have, by virtue of the four years spent raising Cynthia, a personal stake in the outcome. Therefore, while they have no legal authority to represent Cynthia, they may proceed in their own behalf whenever they consider it necessary to protect their interests.

Mrs. Macias-Rosales was not, however, merely the vacation of the stay nor was it, of course, an attempt to appeal the 1977 deportation order. Her motion was an attempt to secure an order commanding deportation. This was plainly a "cause . . . arising under" the deportation provisions of the immigration laws, 8 U.S.C. § 1329, of which the District Court had jurisdiction.[21] We, therefore, consider the order on its merits.

Our prior opinion, holding that the initial deportation proceedings were conducted without due process, effectively voided that prior adjudication. Had the deportation order remained in force, there would have been no need for further proceedings contradictorily with Cynthia's guardian ad litem. Deportation of Cynthia would have followed as a matter of course absent the guardian's intervention. As a result of our prior mandate, the final order of deportation, entered on December 16, 1977, must be considered without force. Cynthia is, therefore, in the same position as any alien who appears deportable.

■ The prior deportation order being void for want of due process, the District Director had discretion either again to commence a deportation proceeding or not to do so.[22] That discretion is, like prosecutorial discretion, immune from review in the courts.[23] While the INS order is framed in terms of a "stay of deportation," we treat it as a refusal to institute further proceedings and affirm the District Director's authority to exercise his prosecutive discretion in that manner. We, therefore, affirm the District Court order refusing to vacate the stay.[24]

## VI.

■ The APA generally precludes judicial review of the manner in which the Attorney General chooses to exercise his discretionary authority to inquire into the immigration status of an alien who is seeking admission to this country or is here without proper documentation. *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975); 5 U.S.C. § 701(a)(2). It would, therefore, be inappropriate for us to instruct the District Director concerning the exercise of his discretion. Because, however, the District Director not only misinterpreted the effect of our prior decree on the deportation order, but also erred in his interpretation of the reasons for that decision, we amplify it, so that his future actions will not be improperly influenced by what may have been a lack of clarity in that opinion.

■ Our prior opinion must not be read as instructing the District Director that deportability of a person is to be determined solely by what is in that person's best interests, whether the person be an adult or a child. None resist deportation save those who think it is in their best interests to remain. Instead our mandate was designed only to assure Cynthia due process by requiring that she be represented by a competent guardian ad litem with fidelity only to her. The effect of our prior judgment was to void the original order of deportation because the proceeding underlying that order deprived Cynthia of the process due her under the Constitution. We did not under-

21. The nature of the motion filed by the Johns is ambiguous. Its primary purpose appears to have been as a vehicle to argue against Mrs. Macias-Rosales' motion. Nevertheless, they also requested custody of the child, a claim more closely related to a petition for habeas corpus than to a cause arising under the immigration laws.

22. In view of the district director's prosecutorial discretion to decide whether to institute deportation proceedings, we do not mean to imply by our use of the phrase, "to conduct all further proceedings involving Cynthia contradictorily with her guardian ad litem," that the INS *must* institute such proceedings. We

mean only that any deportation proceedings instituted must be conducted in conformity with constitutional requisites, namely proper representation for Cynthia.

23. *Compare Lennon v. United States*, 387 F.Supp. 561, 564 (S.D.N.Y.1975). *See also Lennon v. INS*, 527 F.2d 187, 195 (2d Cir. 1975).

24. We hold also that the District Court was correct in refusing both to grant temporary custody, as requested by the Johns, and to order deportation, as sought by Mrs. Macias-Rosales.

take to direct how the District Director should proceed so long as he accorded Cynthia due process.[25]

Whether or not Florida courts have jurisdiction over Cynthia, they can in the proceeding presently pending determine only who is entitled to her custody. Save insofar as a custody determination decides whether a person is the "child" of a citizen, custody is not a statutory factor in determining deportability. *See, e. g.*, 8 U.S.C. § 1101(b)(1)(F), 8 U.S.C. § 1401(a)(3); 8 C.F.R. 211.5. It was neither our order nor our intention that the resolution of these protracted deportation proceedings await Florida court proceedings to determine Cynthia's custody. *Cf. Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978) (the presence of the alien children in the United States was concededly lawful but only their custody was contested).

All parties agree that Cynthia has been harmed by the disruption of her life that has already occurred. They differ only in how they would repair that part of her life. Her life is in limbo at a time when she is most in need of parental affection and guidance. It was not our direction that the District Director's decision await another indefinitely prolonged period of legal thrust and counterthrust, but only that Cynthia's due process rights be protected and her status be adjudicated without delay. This has been accomplished in part by the appointment of the guardian ad litem and by his appearance in all proceedings as Cynthia's representative. It will be assured by his continued representation of her.

The Attorney General, as we have noted, has delegated his statutory authority to determine deportability and, if deportability is found, discretion in acting on that decision, to the District Director. That officer has a duty to decide whether to proceed against Cynthia. We perceive nothing in either the statute or the regulations that requires him to go through a sort of abstention process, particularly when the state court will decide only whether it has jurisdiction, and, if so, who should have custody of her.[26] The issues before him, whether Cynthia is lawfully in this country, whether she should be deported, whether there is a statutory or factual basis for executive compassion and, if so, whether it should be extended to avoid deportation, and related questions, are no more difficult than issues such as moral turpitude,[27] legality of entry, validity of marriage,[28] and fraud and misrepresentation[29] that are decided in immi-

---

**25.** Moreover, the Constitution limits the jurisdiction of federal courts to cases or controversies. Art. III, § 2, Constitution of the United States. This limited power does not extend to matters of sovereign prerogative power in which the state acts as *parens patriae. Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). *See Fontain v. Ravenel*, 58 U.S. (17 How.) 369, 391, 15 L.Ed. 80 (1855) (Taney, C.J., concurring); C. Wright, Federal Courts 97 (3d ed. 1976). Thus, federal courts lack jurisdiction of probate proceedings, domestic relations matters and custody disputes, *see, e. g., Huynh Thi Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978) (federal courts without jurisdiction to resolve custody dispute involving Vietnamese orphan), even if the parties are of diverse citizenship. *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 854, 34 L.Ed. 500, 503 (1890) (decided before the federal courts had independent habeas corpus jurisdiction). While *Burrus* generally leaves federal courts without authority to enter domestic relations disputes, it is not a bar to habeas corpus relief under the present statute. *See also* C. Wright, Federal Courts, 2d ed. 98, § 225; 13 C. Wright,

A. Miller & H. Cooper, Federal Practice and Procedure: Jurisdiction, § 609, nn. 28–32.

Custody proceedings must be distinguished from habeas corpus. The writ of habeas corpus tests the legality of detention by a government official to determine whether it is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2441. Custody proceedings involve determinating which of various persons competing to care for a person has that right.

**26.** Federal immigration authorities lack authority to determine custody of a child or to enforce the custodial rights of others. *See Huynh Thi Anh v. Levi*, 427 F.Supp. 1281 (E.D.Mich.1977), *aff'd* 586 F.2d 625 (6th Cir. 1978). *See also* note 25 *supra*.

**27.** 8 U.S.C. § 1251(a)(4).

**28.** 8 U.S.C. § 1251(c). *See, e. g., United States v. Sacco*, 428 F.2d 264, 267–271 (9th Cir. 1970).

**29.** 8 U.S.C. § 1182(a)(19).

gration hearings daily.[30] Important issues affecting Cynthia must be resolved, at least initially, and perhaps exclusively, by the District Director. Delay is an act of injustice to Cynthia, not of mercy. It is also, to a lesser degree, a prolongation of the anxiety and distress that disturbs the lives of Mrs. Macias-Rosales and Mr. and Mrs. Johns.

Because the guardian ad litem was appointed by the District Court and acts under the orders of that court, subject to our review, we do consider it appropriate to remind him that he was appointed to assure Cynthia due process and to safeguard her best interests; and that each of the many experts whose opinions are now in the record, whether consulted by him or, by Mrs. Macias-Rosales, or by the Johns, or appointed to advise this Court, has concluded that prolongation of the present crisis in Cynthia's life is harmful to her, perhaps irreparably.[31] We do not consider it necessary, as a matter of law, that the guardian ad litem await state court adjudication of Cynthia's best interests. We require only that he satisfy himself that the action he recommends is in her best interests and that he then vigorously pursue that recommendation before the administrative agency and the courts. We intimate no opinion concerning the extent of his duties, if any, with regard to proceedings relating to Cynthia's custody, a matter not within our jurisdiction.

## VII.

The action of the INS in detaining a person is, as we have noted, subject to challenge by petition to the District Court for habeas corpus. 8 U.S.C. § 1105a(a)(9). The Johns raised the habeas corpus issue by a motion "on behalf of Cynthia."[32] The denial of that motion served as the basis for their initial appeal to this Court. In our prior opinion finding that the deportation proceeding was conducted in contravention of Cynthia's due process rights, we did not address the merits of the Johns' petition for habeas corpus. Mrs. Macias-Rosales has also filed a habeas corpus petition in the same District Court, but that case has been allotted to another judge. In neither case has the District Judge made any findings of fact concerning the merits.[33]

---

**30.** See, e. g., Scharf v. United States Attorney General, 597 F.2d 1240 (9th Cir. 1979), (question whether a child born in Mexico was the natural child of a United States citizen).

**31.** Without intimating in the slightest an opinion concerning what the decision should be, we call attention to a CSB report as demonstrating the extreme need for prompt decision. The report, submitted as an amicus brief in the Florida state court proceedings, reads in part:

> Permanency in child care is an issue paramount to the social work profession in the United States and Florida. The need for stability in placement was recognized by CSB early in this case when it was recommended the child be returned to the primary caretakers (the "adoptive" parents) for the duration of the Court proceedings. However, in light of the length of separation between the child and "adoptive" parents and, importantly, in view of the material subsequently presented regarding the suitability of the "adoptive" parents, and from CSB's observation and evaluation of the child during these past months, CSB does not feel replacement with the "adoptive" parents is at all in the child's best interests.

Having thus urged not only that the lapse of time is harming Cynthia but that the course of events occurring during that time may change the decisional factors, the report later continues:

> It is time that those who lament our system's inability to make Solomonian decisions, stop trying to make one. The subject of this action is now a five year old child who needs to be placed with her family. Confusion already exists in her mind. Is this situation to be exacerbated by introducing yet another family and many more years of legal battles?

**32.** In light of our discussion in note 20, supra, we emphasize that the Johns have no legal authority to proceed on "behalf of Cynthia." They may prevail in a habeas corpus proceeding only if, based on the findings of the district court, the INS has unconstitutionally or illegally removed Cynthia from their control. Similarly, Mrs. Macias-Rosales can prevail only if she can prove that Cynthia is being illegally or unconstitutionally detained from her control by the INS.

**33.** The District Court, in Case No. 80–5135, held, without detailing any supporting facts, that the Johns' petition was "devoid of any material allegations constituting any sufficient basis for the writ of habeas corpus." Counsel informed us during oral argument that the District Judge considering the petition filed by Mrs. Macias-Rosales has not held a hearing or reached a decision.

A petition for habeas corpus in federal court challenges only the legality and the constitutionality of a person's detention. *See United States ex rel. Marcello v. INS,* 634 F.2d 964, 965 (5th Cir. 1981). So long as the petitioner has standing to raise that issue, it neither requires nor permits the federal court to determine who, among private persons competing to care for another, has the right to custody. We find the record insufficient to determine whether the District Court erroneously denied the Johns' habeas corpus petition. Because the record contains only ex parte statements concerning the facts surrounding Cynthia's birth and entry into this country, we are unable to determine whether she is now being held illegally or unconstitutionally. This Court cannot review such an issue without the benefit of a final determination by a District Court based on its findings of fact. While a petition for habeas corpus directed at the INS is usually reviewed by reference only to the administrative record, the District Court may, if necessary, conduct a hearing to take evidence concerning illegal action that is not reflected in the record.[34] Therefore, we remand the case initially appealed for a determination of the merits of the Johns' habeas corpus application. In order to avoid duplication of effort, and possible inconsistency of results, that proceeding must be consolidated with Mrs. Macias-Rosales' petition and be considered by the same District Judge.[35] The guardian ad litem should appear in the consolidated proceeding to assure that Cynthia, as a person, is accorded her legal rights. Perhaps redundantly, we stress that each habeas corpus proceeding challenges only the legality of Cynthia's detention, from each of the petitioners, by the INS, and that in neither habeas proceeding does the federal District Court have jurisdiction to determine who, between Mrs. Macias-Rosales and the Johns, has the right to custody. Each of them is proceeding contradictorily with the INS and not against the other. *See also* note 32, *supra.*

## VIII.

The District Court order issued pursuant to our mandate in case No. 80–5135, appointing guardians ad litem and ordering any deportation proceedings to be pursued contradictorily with them, is maintained in force. The order enjoining Cynthia's deportation is maintained in force unless a final order of deportation is entered pursuant to proceedings conducted contradictorily with the guardian ad litem.

The District Court order in Case No. 81–5062, refusing to vacate what the district director called a stay of deportation, is affirmed.

Case No. 80–5135 is remanded for modification of the District Court's order of August 6, 1980, for further proceedings consistent with this opinion. That cause, including the petition for habeas corpus set forth in it, is consolidated with the petition for habeas corpus filed by Mrs. Macias-Rosales and now pending in the District Court, and with Case No. 81–5062. All of these proceedings shall be allotted to the same judge for further proceedings consistent with this opinion.

This Court continues to retain jurisdiction so that any appeals can be expeditiously heard. To avoid the type of delay that

34. *Cf. Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1199 (9th Cir. 1975).

35. This does not mean, however, that all INS proceedings must be stayed pending conclusion of the two habeas corpus actions. Of course, until the INS concludes its proceedings, our injunction against Cynthia's deportation remains in force. Should a new final order of deportation be issued, it will necessarily be subject to judicial review. Should there be an application for such review, the parties should, by appropriate notice, call the court's attention to the urgency of Cynthia's situation and seek expedited hearing.

We are, of course, aware that, because the legal issues in the habeas corpus proceeding and the considerations relating to deportation action are different, there is a potential for inconsistent determinations. This possibility is inherent in the statutory plan. To the extent temporary injunctive relief is essential to judicial consideration of the habeas corpus proceedings, it is, of course, within the district court's power.

occurred previously, the clerk will promptly notify the panel as soon as any pleading of any kind connected with this matter is filed in this Court. The briefing schedule will be set by the panel. The parties are instructed that any pleading filed is to bear Docket No. 80–5135 and the clerk's special attention is to be directed to it by the attachment of a notice or letter stating: This is a matter in which the Court has retained jurisdiction and is to be given special attention as directed by prior court order.

SO ORDERED.

ON REHEARING

PER CURIAM:

The response of the guardian ad litem demonstrates that the opinion is clear and requires no elucidation or interpretation. This panel has no authority to overrule or to fail to follow *Marcello v. District Director,* 634 F.2d 964 (5th Cir. 1981), application for rehearing en banc denied and *cert. denied,* —— U.S. ——, 101 S.Ct. 3052, 69 L.Ed.2d ——. Therefore, the two motions for rehearing are both DENIED.